UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

SRE REAL ESTATE, LLC, a South Dakota
Limited Liability Company; and
DICK AND JANE'S OF STURGIS, LLC;
a South Dakota Limited Liability Company,

         Plaintiffs,

v.

CITY OF STURGIS, a Municipal Corporation; and
STATE OF SOUTH DAKOTA,

         Defendant,
and

STATE OF SOUTH DAKOTA,

         Intervenor.

Case No.   CIV 10-5064
Honorable Jeffrey L. Viken

---

**PLAINTIFFS' BRIEF ON FACTUAL ISSUES TO BE SUBMITTED TO A JURY**

---

MICHAEL PAULSON (Bar ID. 3674)
HAGEN, WILKA & ARCHER, LLP
Counsel for Plaintiffs
600 South Main Ave, Suite 102
P.O. Box 964
Sioux Falls, South Dakota 57101-0964
(605) 334-0005

SHAFER & ASSOCIATES, P.C.
BRADLEY J. SHAFER (MI P36604)*
MATTHEW J. HOFFER (MI P70495)*
Co-Counsel for Plaintiffs
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
(517) 886-6560
*Admitted Pro Hac Vice

GUNDERSON, PALMER,
  NELSON & ASHMORE, L.L.P.
DONALD P. KNUDSEN
QUENTIN RIGGINS
Counsel for Defendant
44 Mount Rushmore Road, P.O. Box 8045
Rapid City, SD 57709-8045
(605) 342-1078

MARTY J. JACKLEY
ROXANNE GEIDD
Office of Attorney General
Counsel for Intervenor State of South Dakota
1302 E. Highway 14, Suite 1
Pierre, South Dakota 57501
(605) 342-1078

## INTRODUCTION

Plaintiffs have purposefully limited the claims presented in Plaintiffs' Motion for Preliminary Injunction (the "Motion") to primarily issues of law where there are few, if any, factual disputes. Simply put, Plaintiffs' claims that the "Regulations" (SDCL Chapter 11-12 and City of Sturgis Municipal Code of Ordinances § 2.03.13) violate their rights under the First and Fourteenth Amendments, and that this Honorable Court can, at the very least, determine that the Plaintiffs have a probably of success on the merits of *at least* those limited issues without the necessity of undertaking substantial discovery and without the Court being required to consider substantial questions of fact. By contrast, Plaintiffs' claims *as a whole* will require full discovery, and must involve detailed factual development and findings at trial. However, Plaintiffs' factual claims, particularly its prior restraint claim, can resolve the Motion without the need for any findings of fact by the Court prior to the jury trial demanded by Sturgis.

### I. LEGAL PRINCIPLES RELEVANT TO THE DECISION WHETHER TO CONSOLIDATE A PRELIMINARY INJUNCTION HEARING WITH A TRIAL ON THE MERITS.

"A litigant applying for a preliminary injunction should *seldom be required* either to forego discovery in order to seek emergency relief, or *to forego a prompt application for an injunction in order in order to prepare adequately for trial*." Gellman v. State of Maryland, 538 F.2d 603, 604 4th Cir. 1972) (quoting Pughsley v. 3750 Lake Shore Drive Coop. Bld., 463 F.2d 1055, 1057 (7th Cir. 1972))(emphasis added).

Prompt consideration of Plaintiffs' claims here is certainly appropriate in light of the recognized public interest in upholding First Amendment rights. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." Sammartano v. First Judicial District Court, in and

1

for County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002). *See also* U.S. v. Playboy Entertainment Group, Inc., 529 U.S. 803, 816-817 (2000) (the importance of First Amendment rights is such that "[w]hen the Government restricts speech, *the Government bears the burden of proving the constitutionally of its actions . . . .*" and "*the usual presumption of constitutionality afforded congressional enactments is reversed.*") (emphasis added). Moreover, it is well established that any infringement of First Amendment rights, for even minimal periods of time, constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 353, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Eight Circuit, of course, follows this doctrine. *See, e.g.,* Marcus v. Iowa Public Television, 97 F.3d 1137, 1140 (8th Cir. 1996). Consequently, Plaintiffs are entitled to prompt consideration of the limited issues they have raised in their preliminary injunction motion, and should not have to await the undertaking of substantial discovery in order to be able to have this Court fully consider and adjudicate *all* of their potential claims (including their request for damages), as a predicate to obtaining judicial relief to the irreparable harm to their First Amendment rights that the Plaintiffs are currently suffering.

Determinations made in resolution of a motion for preliminary injunction are only preliminary in nature such that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Thus, Sturgis's right to a trial by jury will not be adversely affected so long as ultimate resolution of appropriate facts lies with the jury upon a full trial on the merits.

## II. CONSTITUTIONAL QUESTIONS ARE DECIDED BY THE COURT AS A MATTER OF LAW.

"Generally, whether a constitutional violation occurs in a question of law." Porth v. Farrier, 934 F.2d 154, 156 (8th Cir. 1991) (citing U.S. v. McKines, 933 F.2d 1412 (8th Cir.

2

1991) (other citations omitted). But, "usually the jury will pass on disputed factual questions." Id. (citing **Best v. District of Columbia**, 291 U.S. 411 (1934) (other citation omitted). *See also* **U.S. v. Platte**, 401 F.3d 1176, 1189, (10th Cir. 2005) (whether a state is "unconstitutionally vague as applied is a question of law . . .").

Thus, to the extent that Plaintiffs' claims present "mixed questions" of law and fact, a jury will decide underlying or historical facts, while the court will apply the constitutional principles to the facts to determine whether a constitutional violation has occurred. *See, e.g.,* **Hill v. McKinley**, 311 F.3d 899 (8th Cir. 2002) ("whether the evidence, when viewed in this light, establishes a constitutional violation and, if so, whether the right was clearly established at the time are questions of law that we review de novo"), *cited in* **Kuha v. City of Minnetonka**, 328 F.3d 427, 438 (8th Cir. 2003) (for the proposition "whether the evidence establishes a constitutional violation is a question of law"), *amended and superseded by* **Kuha v. City of Minnetonka**, 365 F.3d 590 (8th Cir. 2003). *Accord* **U.S. v. Davis**, 174 F.3d 941, (8th Cir. 1999) ("[w]e review the district court's factual determinations concerning the detention for clear error; the district court's ultimate conclusion as to whether the Fourth Amendment was violated is a question of law subject to de novo review") (quoting **United States v. Pereira-Munoz**, 59 F.3d 788, 791 (8th Cir. 1995)).

This division of labor is consistent with the standard of review the Eight Circuit has applied to First Amendment cases, whereby it reviews "a district court's factual findings for clear error and its legal conclusions de novo." **Weir v. Nix**, 114 F.3d 817, 820 (1997) (establishment clause). Likewise, in **Recupero v. New England Tel. and Tel. Co.**, 118 F.3d 820 (1st Cir. 1997), the First Circuit recognized than an "appellate court accords significant deference to trial court's factual determinations and most of its resolution of fact/law issues, letting them stand unless they are clearly erroneous, but engages in *de novo* review of trial courts

3

application of a First Amendment standard to the facts of the particular case." **Id** at 830 (citing **AIDS Action Comm. Of Mass, Inc. v. Massachusetts Bay Transp. Auth.**, 42 F.3d 1, 7 (1st Cir. 1994).

Similarly, in **Roberts v. Van Buren Public Schools**, 773 F.2d 949 (8th Cir. 1985), the Eight Circuit found that the district court impermissibly submitted a protected speech question to the jury.

> [T]he instructions in this case have two additional shortcomings. First, the issue of whether the protected conduct was a substantial factor in the employment decision was combined with the issue of whether the conduct was protected, so that we do not know how causation was decided by the jury; and second, the jury because it found in the negative to the two-issue interrogatory, was instructed not to decide the question of whether [Plaintiffs] would have been renewed absent any protected conduct. *This later question and the causation question, in contrast to the protected speech question, are issues of fact to be determined by the jury*. . . . It is essential in cases such as this that the factual issues be submitted to the jury in separate interrogatories that the consideration of these interrogatories not be foreclosed by earlier answers so that the court will be able to properly combine the factual findings with *its legal conclusions*.
>
> Because the protected nature of speech *is a question of law*, however, we may determine this issue in the first instance at the appellate level, possibly making unnecessary or limiting the scope of the issues to be considered.

**Id**. at 954-55.

Even the Seventh Circuit, which regards itself as "a leader in insisting that clear error is the correct standard for all so-called mixed questions of law," recognizes a "handful of exceptions . . . founded mainly on First Amendment concerns . . .") **U.S. v. Humphrey**, 34 F.3d 551, 558 (7th Cir. 1994) (citing **Barber v. Ruth**, 7 F.3d 636, 642-43 (7th Cir. 1993). **Barber** (7 F.3d at 643 n.8), in turn cites to **Bose Corp. v. Consumers Union of U.S., Inc.**, 466 U.S. 485, 499 (1984) ("in cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression")

4

(internal quotations omitted), and <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 285, 285 n. 26 (1964) (same, and also stating "[t]his court will review the findings of facts by a State court where a conclusion of law as to a Federal right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the Federal question, to analyze the facts") (citation omitted). The importance of courts resolving the ultimate question of law in First Amendment cases has been repeatedly emphasized.

The Ninth Circuit further explained that de novo review is appropriate in First Amendment cases where a court is required "to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles." <u>Bay Area Peace Navy v. U.S.</u>, 914 F.2d 1224, 1227 n.1 (9th Cir. 1990). The same concerns are presented here, and the Court should, itself, pass ultimate judgment upon whether the constitutional standard has been met.

### III. THE PRIOR RESTRAINT CLAIMS.

Laws which require a citizen to obtain government permission prior to engaging in First Amendment Activity are prior restraints. <u>Shuttlesworth v. City of Birmingham</u>, 394 U.S. 147, 150-51 (1969). Prior restraints are evaluated on their face to determine whether they contain the adequate safeguards, as exhaustively explained by the Court in <u>City of Lakewood v. Plain Dealer Pub. Co.</u>, 486 U.S. 750 (1988):

> At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *E.g.,* <u>Shuttlesworth</u>, *supra,* 394 U.S., at 151, [ ]; <u>Cox v. Louisiana</u>, 379 U.S. 536 [ ] (1965);<u>Staub v. City of Baxley</u>, 355 U.S. 313, 321-322, [ ] (1958); <u>Kunz v. New York</u>, 340 U.S. 290, 294, [ ] (1951); <u>Niemotko v. Maryland</u>, 340 U.S. 268, [ ] (1951); <u>Saia v. New York</u>, 334 U.S. 558 [ ] (1948). And these evils engender identifiable risks to free expression that *can be effectively alleviated only through a facial challenge.* First, the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint,

5

intimidates parties into censoring their own speech, even if the discretion and power are never actually abused. As we said in **Thornhill [v. Alabama]**:

***"Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas*** . . . . The power of the licensor against which John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing' is pernicious not merely by reason of the censure of particular comments but by the reason of the *threat to censure comments on matters of public concern.* It is not merely the sporadic abuse of power by the censor *but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.*" 310 U.S., [88,] 97, [(1984)] (emphases added).

See also **Freedman**, [**v. Maryland**, 380 U.S 51 (1965)]. *Self-censorship is immune to an "as applied" challenge,* for it derives from the individual's own actions, not an abuse of government power. It is not difficult to visualize a newspaper that relies to a substantial degree on single issue sales feeling significant pressure to endorse the incumbent mayor in an upcoming election, or to refrain from criticizing him, in order to receive a favorable and speedy disposition on its permit application. Only standards limiting the licensor's discretion will eliminate this danger by adding an element of certainty fatal to self-censorship. *Cf.* **Hoffman Estates v. Flipside, Hoffman Estates, Inc.**, 455 U.S. 489, 498 [ ] (1982) (vagueness doctrine). And only a facial challenge can effectively test the statute for these standards.

***Second, the absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power.*** Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression. *See, e.g.,* [**Secretary of State of Maryland v.**] **Joseph H. Munson Co.**, *supra*, 467 U.S., [947,] 964, n. 12, [(1984)]; **Cox v. Louisiana**, *supra*, 379 U.S., at 557, 85 S.Ct., at 465. Further, the difficulty and delay inherent in the "as applied" challenge can itself discourage litigation. A newspaper espousing an unpopular viewpoint on a shoestring budget may be the likely target for a retaliatory permit denial, but may not have the time or financial means to challenge the licensor's action. That paper might instead find it easier to capitulate to what it perceives to be the mayor's preferred viewpoint, or simply to close up shop. Even if that struggling paper were willing and able to litigate the case successfully, the eventual relief may be "too little and too late." Until a judicial decree to the contrary, the licensor's prohibition stands. In the interim, opportunities for speech are irretrievably lost. **Freedman**, *supra*, 380 U.S., [51,] 57[(1965)]; see also **Saia**, *supra*, 334 U.S., at 560, 68 S.Ct., at 1149; **Cantwell v. Connecticut**, 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940). In

6

>sum, without standards to fetter the licensor's discretion, the difficulties of proof and the case-by-case nature of "as applied" challenges render the licensor's action in large measure effectively unreviewable.

**Id.** at 757-759 (bolded emphasis added).

Therefore, it is immaterial whether or not the administering official has acted improperly. Adjudicating whether the Regulations constitute an impermissible prior restraint (or, more applicable here, whether the Plaintiffs have demonstrated that they will *probably* succeed on the merits -- **Dataphase Systems, Inc., v. C. L. Systems, Inc.**, 640 F.2d 109, 113 (8th Cir. 1981)) should not require *any* factual findings, and, in any event, this Court can certainly determine whether Plaintiffs have a probability of succeeding on the merits of this claim at the preliminary injunction stage of these proceedings.

However, that does not mean that there are no relevant findings of fact that may be necessary at trial. For example, if the facts establish that the Regulations were enforced against Plaintiffs in a discretionary manner, the State and City will be unable to argue that the laws adequately cage the potential for discretion. Such issues may also necessarily be explored in the context of Plaintiffs' vagueness claims discussed below.

Still, this issue can resolve the Motion (in Plaintiffs' favor) as a matter of law and without any need for further factual findings at the preliminary injunction phase. As explained in the Brief in Support of Plaintiffs' Motion for Preliminary Injunction (Doc. 46, p. 7), nothing about SDCL, Ch. 11-12 supports the conclusion that SDCL, Ch, 11-12 was intended to be used as a prior restraint, which precludes expression in advance. Even the penalty provisions (criminal violations and chilling effect aside) refer only to enjoining further violation of the statute rather than padlocking or complete forced closure. SDCL § 11-12-6. It is Sturgis's misuse of the state law -- through its certificate of occupancy requirement -- as a prior restraint that is particularly repugnant to the First Amendment, and has placed the parties in the rather odd current

7

predicament. Declaring such use of SDCL Ch. 11-12 as an unconstitutional prior restraint can resolve the Motion without need for the remaining issues to be adjudicated, allowing all factual disputes to be resolved once by a jury following a trial on the merits.

## IV. THE VAGUENESS CLAIMS.

Plaintiffs have asserted that the Regulations are unconstitutionally vague both facially and as applied by Sturgis. Examination of a vagueness claim involves two separate inquiries.

> First, a vague law may not provide a clear articulation of prohibited activity so that citizens of ordinary intelligence may regulation their primary activity accordingly. Vague laws may trap the innocent by not providing fair warning, or they may lead citizens to steer far wider of the unlawful zone than if the boundaries were clearly delineated. **Grayned v. City of Rockford**, 408 U.S. 104, 108-109 [ ] (1971). The second way that a vague law is repugnant to the Constitution is the manner in which it is enforce or administered. If arbitrary and discriminatory enforcement is to be prevented, the law must include in its terms explicit standards to guide those whose responsibility it is to enforce the law. **Grayned**, 408 U.S. at 108-109.

**Nichols v. Planning and Zoning Comm'n of the Town of Stratford**, 667 F. Supp. 72, 77 (D. Conn. 1987).

If the Court finds, as a matter of law, that the Regulations are impermissibly vague on their face, it is possible that this Court need not then even address the "as applied" challenge. However, if it is necessary to reach the "as applied" aspect of the vagueness challenge, it will, as explained in Section II, *supra*, the as applied vagueness claim will require historical and underlying facts to be submitted to a jury. Such claims will include the nature of Mr. David Eliason's interactions with Sturgis Director of Community Development Rick Bush. It will then be for the Court to decide whether the constitutional standards have been met. *See, e.g.*, **U.S. v. Ochoa-Colchado**, 521 F.3d 1292, 1299 (10th Cir. 2008) ("[a]s-applied vagueness challenges involve a factual dimension in that vagueness is determined "in light of the facts of the case at hand") (quoting **U.S. v. Bennett**, 329 F.3d 769, 777 (10th Cir. 2003)). This is not a case where

8

the municipal authority inspected the premises, classified the wares offered for sale, and made a determination accordingly. Thus, the "as applied" claim will not require the Court to evaluate (or reevaluate) such matters, as they were not part of Sturgis's application of the Regulations against Plaintiffs. The facial claims will require the Court only to evaluate the language of the statute.

## V. THE ALTERNATIVE AVENUES CLAIMS.

The City of Sturgis has admitted that there are no locations within its municipal boundaries that meet the distance requirements so as to permit the establishment of an "adult" business within the municipal boundaries. Plaintiffs assert (by way of their preliminary injunction motion and otherwise) that this concession should end the constitutional analysis by this Honorable Court. Nevertheless, Sturgis argues that certain extra-municipal properties can be evaluated in determining whether the Regulations constitute an unconstitutional "zone out" of certain First Amendment protected activities.

First, whether extra-municipal sites can be utilized is a question of law for this Court to decide. If the Court rules that such locations *may* be considered, the factual determination will have to be made as to whether such sites are truly "available" from a constitutional standpoint.[1] Second, whether a given number of sites constitute reasonable alternative avenues of expression is an issue to be resolved on a case-by-case basis, taking into account any factors that may affect whether adult entertainment establishments are on "equal footing with other prospective purchasers." **Boss Capital, Inc. v. City of Casselberry**, 187 F.3d 1251 (11th Cir. 1999).

---

[1] Plaintiffs contend that Meade County, the county in which Sturgis is located, contains purely discretionary licensing for "adult" businesses, and any potential sites in Meade County therefore do not satisfy the constitutional standards under First Amendment jurisprudence. The same goes for Pennington County. It is contended that a few theoretical sites exist in Lawrence County, although the "factual" issue would be whether they are actually available for adult use. Upon information and belief, each such site in Lawrence County is within the prohibited distance of a residence.

9

Likewise, whether a given site is available, requires a specific examination of the physical and legal characteristics of the site. **Tollis v. County of San Diego**, 505 F.3d 935, 941 (9th Cir. 2007) (noting that for a site to be available it must "be reasonably accessible to the generally public, have property infrastructure and be suitable for some generic commercial enterprise," and that the analysis "must account for other relevant zoning restrictions, that might affect a site's availability") (internal quotations and citations omitted).

To the extent that the State proposes sites outside the forum city of Sturgis, which Plaintiffs regard as constitutionally impermissible, the State would, in any event, "bear the burden of proving the adequacy of available alternatives" by reference to "regional marketing patterns, availability of public transportation and access by automobiles, geographical distribution of customers at comparable [ ] businesses, and other factors deemed relevant by the court and the parties." **Township of Saddle Brook v. A.B. Family Center, Inc.**, 722 A.2d 530, 535-536 (N.J. 1999). These are essentially factual matters that may ultimately be submitted to a jury depending on a host of prior legal rulings this Court will have to make. If the Court rules in Plaintiffs' favor on one or more of these legal issues (either by way of rulings in the preliminary injunction motion, or by motions in limine or the like), no such factual issues will have to be decided by the jury.

If this factual issue must be analyzed in this litigation, the factual development must begin with the City of Sturgis proposing legally sufficient alternative sites.

> According to the district court opinion, [ ], Long Beach provided pertinent, specific and detailed information about each site, based on this information, the district court found that Long Beach made a good faith and reasonable attempt to prove that it was provided the Plaintiffs with a reasonable opportunity to open and operate. *A city cannot merely point to a random assortment of properties and simply assert that they are reasonably available to adult businesses.* The city's duty to demonstrate the availability of properties is defined, at a bare minimum, by reasonableness and good faith. If a plaintiff can show that a city's attempt is not in fact in good faith or reasonable, by, for example, showing that a

10

> representative sample of properties are on their face unavailable, then the city will be required to put forth more detailed evidence. But where a city has provided a good faith and reasonable list of potentially available properties, it is for the Plaintiffs to show that, in fact, certain sites would not reasonably become available. *See also* **Hickerson v. New York City**, 146 F.3d 99, 107 (2d Cir.1998).

**Lim v. City of Long Beach**, 217 F.3d 1050, 1056 (9th Cir. 2000) (emphasis added).

Presently, neither Sturgis nor the State have made any good faith attempt to identify reasonably available sites. Hence, they have failed their burden, and Plaintiffs would otherwise be entitled to judgment on this factual issue as a matter of law. To the extent that it is able to do so, Plaintiffs anticipate working with the State toward stipulations regarding the location, physical characteristics, and other issues relevant to the "availability" of such sites in order to reduce the number of factual issues that will be presented to the Court.

However, in reality, this is not the type of case that will require detailed factual findings. Plaintiffs' can rebut any showing by the State and demonstrate that insufficient alternative avenues are available by simple reference to the legal restrictions on properties in Mead County and neighboring Lawrence County and Pennington County. The City's admission that no alternative avenues exist in Sturgis, by itself, establishes that insufficient alternatives exist. To the extent that the State proposes extra-jurisdictional alternatives, as explained in the Reply in Support of Plaintiffs' Motion for Preliminary Injunction (Section II) those venues are foreclosed by applicable zoning and/or licensure laws, as well as by SDCL Ch. 11-12.

Meade County requires licenses for adult oriented businesses that may only be issued in the discretion of the board, meaning no land is available. Pennington County restricts such uses to be conditional uses available only through a discretionary process; thus no sites are available. Lawrence County restricts such businesses to a scantily

11

available zoning classification, whereby the few areas are disqualified by residences pursuant to SDCL, Ch. 11-12. Thus, the only "findings" necessary are the existence of the restrictive codes, and the location of residences and other uses that disqualify those few slivers of land. Hence, in reality, the findings necessary for the alternative avenues analysis may require few, if any, factual determinations for a jury.

## VI.   PLAINTIFFS OTHER CLAIMS.

Plaintiffs remaining claims,[2] not presented in its motion for preliminary injunction, do encompass significant factual proofs and will require full discovery and development. The first and most obvious among these is Plaintiffs' damages claim, which will require the factual determination of proximate causation and the amount of damages. This factual determination will be predicated upon the preparation of appropriate testimony and evidence by a forensic accountant or other appropriate qualified individual retained by the Plaintiffs, and, presumably, counter experts on the part of the City of Sturgis and the State. In addition, since the State has intervened, Plaintiffs "as applied" void-for-vagueness claim will require them to discover the enforcement practices being used by the State. This will required Rule 30(b)(6) depositions of appropriate State officials regarding the interpretation and enforcement of Ch. 11-12 and additional discovery on the State's methods with regards to other businesses. While *potentially* necessary for the full trial on the merits, Plaintiffs believe that they can successfully litigate their preliminary injunction motion without involving such issues or having to undertake at this early time discovery related thereto.

Plaintiffs' overbreadth claim will also require significant investigation and offer of factual proof. Under the First Amendment, a law is overly broad if it prohibits a

---

[2] The claims articulated in this section are examples only, and by no means an exhaustive list.

substantial amount of protected speech in relation its legitimate sweep. **U.S. v. Williams**, 553 U.S. 285, 292-293 (2008). The state alleges that Ch. 11-12 is aimed at reducing alleged secondary effects. Plaintiffs believe that they can prevail on their zoning challenges without ever having to challenge the "secondary effects" justification for the enactment of the Regulations, and that the preliminary injunction ruling will demonstrate this. However, to the extent that this Court rejects the Plaintiffs' various legal challenges set forth above, it is possible that at trial factual determinations will have to be made in regard to whether the State and the City had materials before it that they could have "reasonably" relied upon in enacting the Regulations; whether the Regulations have had a tendency of significantly reducing "adverse secondary effects;" and whether the Regulations have resulted in more than a *de minimus* reduction in First Amendment protected activities.

In addition, the overbreadth challenge may raise factual issues in regard to the reality that the definitions contained in Ch. 11-12 apply to any videographic or printed matter that contains nudity, a description of nudity or a description of a sexual act, no matter how fleeting and regardless of the context. SDCL §§ 11-12-1(2), 11-12-1(14), and 11-12-1(15). If the Plaintiffs are required to litigate this issue at trial, proof of this matter will involve presentation of commonly available material that fall within the purview of Ch. 11-12. As the legal overbreadth standard suggests, the presentation of such material will be substantial.

## CONCLUSION

As explained above, the factual maters necessary for the resolution of Plaintiffs motion for preliminary injunction are rather minimal. Plaintiff anticipates that it will involve the testimony of Sturgis Director of Community Rick Bush, Sturgis's code

13

enforcement officials that visited the location, and Mr. Eliason. Plaintiffs believe that simple factual stipulations regarding proposed alternative sites, if any are actually proposed, will demonstrate that they are not available as a matter of law due to applicable laws and regulations. Moreover, Plaintiffs are not prepared at this juncture to litigate their damage claims, but they certainly desire that this Court consider their preliminary injunction request as soon as possible in order to prevent the further incurrence of irreparable harm to them.

Wherefore, Plaintiffs respectfully request that the Court not consolidate the preliminary injunction hearing with a trial on the merits, and promptly schedule the preliminary injunction hearing the prevent further deprivation of Plaintiffs precious First Amendment rights.

Respectfully Submitted:

*s/Bradley J. Shafer*
BRADLEY J. SHAFER (MI P36604)*
MATTHEW J. HOFFER(MI P70495)*
SHAFER & ASSOCIATES, P.C.
Co-Counsel for Plaintiffs
*Admitted Pro Hac Vice*

*/s/ Michael Paulson*
MICHAEL PAULSON (Bar ID.: 3674)
HAGEN, WILKA & ARCHER, LLP
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing document with the United States District Court for the District of South Dakota, Western Division and upon all opposing counsel.

Dated: November 22, 2010          */s/ Michael Paulson*
                                               MICHAEL PAULSON (Bar ID.: 3674)
                                               HAGEN, WILKA & ARCHER, LLP
                                               Counsel for Plaintiffs
                                               600 South Main Ave, Suite 102
                                               P.O. Box 964
                                               Sioux Falls, South Dakota 57101-0964
                                               (605) 334-0005

1