UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| SRE REAL ESTATE, LLC, a South Dakota Limited Liability Company; and DICK AND JANE'S OF STURGIS, LLC, a South Dakota Limited Liability Company, | ) ) ) ) ) | CIV. 10-5064-JLV |
| | ) | |
| Plaintiffs, | ) ) | ORDER |
| | ) | |
| vs. | ) ) | |
| CITY OF STURGIS, a Municipal Corporation, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| STATE OF SOUTH DAKOTA, | ) ) | |
| Intervenor. | ) ) | |

**INTRODUCTION**

Plaintiffs SRE Real Estate, LLC ("SRE") and Dick and Jane's of Sturgis, LLC ("Dick and Jane's") (collectively referred to as "plaintiffs") filed a verified complaint against defendant City of Sturgis. (Docket 1). The complaint asserts the City of Sturgis violated plaintiffs' rights under the First Amendment and the Due Process Clause of the United States Constitution by denying Dick and Jane's a certificate of occupancy necessary to operate in the City of Sturgis. Id. The State of South Dakota, through the Attorney General, filed a motion for

leave to intervene in the action. (Docket 40). The court granted the motion. (Docket 44).

Pending before the court are cross motions for summary judgment filed by the State of South Dakota, City of Sturgis (collectively referred to as "defendants"), and plaintiffs. (Dockets 113, 116, and 124). Based on the court's analysis, the plaintiffs' motion for summary judgment is granted in part and denied in part and the motions for summary judgment by the State of South Dakota and the City of Sturgis are denied.

## MATERIAL FACTS

### A.    SDCL Ch. 11-12 and City of Sturgis Ordinance § 2.03.13

In 2008, the South Dakota Legislature approved and adopted HB 1151, which subsequently became SDCL Ch. 11-12. That Chapter covers planning and zoning of adult-oriented businesses. During the initial hearing on HB 1151 before the House Local Government Committee, Representative Manny Steele, the prime sponsor, stated, referring to adult-oriented businesses, these businesses have a "constitutional right to be open" but when they have "a negative effect and [are] a blight on [the] community, I believe it is proper for those in authority to take some action." (Docket 115-5 at 3). In his presentation of the bill, Rep. Steele remarked, "[t]he bill I present you today is very similar to a bill passed in the Arizona legislature, and that bill that was

passed there was contested in court. . . . Their ruling was that the Arizona bill was constitutionally acceptable."[1]  (Docket 115-5 at 3-4).

Chris Hupke testified before the House Local Government Committee Hearing, explaining the committee should not pass the bill based on content and that what the bill "recognizes is that certain activities within that business can and do lead to negative secondary effects." Id. at 7.  Mr. Hupke repeated that "this is not about one business and it's not about whether or not we approve or disapprove of the content of those businesses.  This has nothing to do with their content." Id. at 9.

The South Dakota House and Senate passed HB 1151 and it ultimately became law.  Any existing adult-oriented businesses not in compliance with SDCL Ch. 11-12 at the time it was passed were "grandfathered in" and not made subject to the requirements of SDCL Ch. 11-12.

"Adult oriented businesses" include "any adult arcade, adult bookstore or video store, cabaret, adult live entertainment establishment, adult motion picture theater, adult theater, massage establishment that offers adult service, or nude model studios."  SDCL § 11-12-1(5).  "Adult bookstore or video store" is defined under the statute as:

---

[1]Rep. Steele was referring to Center for Fair Public Policy v. Maricopa County, 336 F.3d 1153 (9th Cir. 2003).  The issue in Center for Fair Public Policy was whether a state statute prohibiting sexually-oriented businesses from operating during late night hours violated the First Amendment. Id. at 1157.  The United States Court of Appeals for the Ninth Circuit held the statute was a valid time, place, and manner restriction and did not violate the First Amendment. Id. at 1164-70.

a commercial establishment that offers for sale or rent any of the following as *one of its principal business purposes*:

(a) Books, magazines, periodicals, or other printed matter, photographs, films, motion pictures, videocassettes or reproductions or slides, or other visual representations that depict or describe specific sexual activities or specific anatomical areas;

(b) Instruments, devices, or paraphernalia, that are designed for use in connection with specific sexual activities.

SDCL § 11-12-1(2)(a) and (b) (emphasis added).  The phrase "one of its principal business purposes" is not defined in the statute.

The spacing requirement of Ch. 11-12 provides:

No adult oriented business established after June 30, 2008, may be located within one-fourth mile of a child welfare agency, a private or public school, a public playground, a public recreational facility, a residence, or a place of worship. For the purposes of this section, measurements shall be made in a straight line in all directions, without regard to intervening structures or objects, from the nearest point on the property line of a parcel containing an adult oriented business to the nearest point on the property line of a parcel containing a child welfare agency, a private or public school, a public playground, a public recreational facility, a residence, or a place of worship.  An adult oriented business lawfully operating in conformity with this section does not violate this section if a child welfare agency, a private or public school, a public playground, a public recreational facility, a residence, or a place of worship subsequently locates within one-fourth mile of the adult oriented business. *A violation of this section is a Class 1 misdemeanor.*  Each day of violation constitutes a separate offense.

SDCL § 11-12-2 (emphasis added).

Section 2.03.13 of the Sturgis Municipal Code requires the building inspector to "issue an occupancy certificate upon completion of [a] building or prior to change of occupancy if the building is found to be in compliance with

4

the City of Sturgis Ordinances and laws of the State of South Dakota." Sturgis, SD, Municipal Code § 2.03.13. (Docket 121-1). SDCL Ch. 11-12 is among those laws the City of Sturgis considers when issuing occupancy certificates.

## B.    Dick and Jane's of Sturgis

David Eliason is the President of both SRE and Dick and Jane's. (Docket 118 at ¶ 25). Dick and Jane's sought to open and operate a retail establishment selling a variety of clothing, lingerie, bath and body products, shoes, hosiery, party supplies, gag gifts, costumes, books, magazines, videos, and novelties, including some materials falling under SDCL § 11-12-1(2)(a) and (b). (Docket 126 at ¶ 1). The proposed location of Dick and Jane's was 2611 Lazelle Street in Sturgis, South Dakota. SRE secured that business location. Dick and Jane's entered into an operating agreement with SRE to conduct business at 2611 Lazelle Street.

Around July 1, 2010, Mr. Eliason first made contact with Rick Bush, Community Development Director for the City of Sturgis. (Docket 118 at ¶ 28). Mr. Bush handles planning and zoning, building inspections, code enforcement, any permits, and he works with the City's administration and attorneys on ordinance review. (Docket 125-1 at 7:15-20). During this initial conversation, Mr. Eliason told Mr. Bush he intended to sell gift items, South Dakota made products and a variety of other goods, services and trinkets at Dick and Jane's. (Docket 118 at ¶ 29). Mr. Eliason made no mention during this conversation that he intended to sell adult products defined under SDCL § 11-12-1(2)(a) and (b). Id. at ¶ 30.

About July 9, 2010, Mr. Eliason initiated a second conversation with Mr. Bush. Id. at ¶ 35. Mr. Eliason told Mr. Bush he intended to sell products defined under SDCL § 11-12-1(1)(a) and (b). Id. at ¶ 36. Sometime after this second conversation, Mr. Eliason and Mr. Bush met in person. Mr. Eliason inquired whether a building permit would be necessary to hang up a slat wall at the 2611 Lazelle Street location. Id. at ¶¶ 37-38. During this same meeting, Mr. Eliason discussed with Mr. Bush other retail stores with which Mr. Eliason had been involved, including Olivias of South Dakota.[2]

During this meeting, Mr. Eliason told Mr. Bush he would be selling products defined under SDCL § 11-12-1(2)(a) and (b) at the 2611 Lazelle Street location. Id. at ¶ 40. However, Mr. Eliason also told Mr. Bush these products would not be the principal purpose of the 2611 Lazelle Street location and would not be anywhere near 50 percent of the inventory. Id. Mr. Bush told Mr. Eliason that upon approval of the building permit and after the inspection for the property was completed, the City would issue a certificate of occupancy.[3] Id. at ¶ 41.

---

[2]Mr. Eliason had been a partner in Olivias of South Dakota. Mr. Eliason indicated that while Olivias operated "adult" theaters and viewing rooms, none of the other businesses which he was involved in had viewing rooms or booths and that he had no intention of having either at the 2611 Lazelle Street location. (Docket 118 at ¶ 39).

[3]Mr. Bush accepted Mr. Eliason's verbal request for a certificate of occupancy. (Docket 118 at ¶ 49). The City of Sturgis does not have an application for a certificate of occupancy and the City accepts verbal requests for certificates. Id. at ¶ 50.

Sturgis Municipal Code § 2.03.13 requires a certificate of occupancy for a newly constructed building or whenever a change in occupancy occurs, as defined in the City of Sturgis Building Code. Under § 2.03.13, Dick and Jane's was required to obtain a certificate of occupancy prior to operating because a change in occupancy from a Class B motor vehicle showroom to a Class M retail business would take place. Id. at ¶¶ 42, 47. The Code states "[t]he Building Inspector shall issue an occupancy certificate upon completion of the building or prior to the change in occupancy if the building is found to be in compliance with the City of Sturgis ordinances and the laws of the State of South Dakota." Sturgis, SD, Municipal Code § 2.03.13.

At a July 20, 2010, meeting, Mr. Eliason and Mr. Bush discussed products that would be offered for sale at Dick and Jane's and the signage for Dick and Jane's. (Docket 118 at ¶¶ 52-54). The preliminary designs for Dick and Jane's signage referred to some of the merchandise as being "Adult Novelties & DVDs." (Docket 123-5). However, the final rendering did not include the word "Adult," rather it referred to "Naughty Novelties & DVDs." (Docket 123-3). Mr. Eliason and Mr. Bush discussed various items that would be offered at Dick and Jane's including the "Fatty Patty" love doll, Hitachi Magic Wand,[4] and other massagers. (Docket 118 at ¶ 55).

During the course of the meeting, Mr. Bush asked Mr. Eliason for a copy of the business plan for Dick and Jane's including a detailed inventory list.

---

[4]Mr. Eliason told Mr. Bush that although the Hitachi Wand was truly intended for massages, it could be used by a female to pleasure herself. (Docket 118 at ¶¶ 55-56).

(Docket 118 at ¶¶ 57, 60).  Mr. Bush testified at his deposition that he requested the business plan "as a resource" because the typical business plan provided to the City included "hours of operation, what they are, in fact, selling, a complete list of their inventory, who to contact, who the emergency information contact people are, et cetera."  (Docket 118 at ¶ 59).  Mr. Eliason told Mr. Bush he did not have an inventory list to provide because all the inventory had not been shipped or stocked.  (Docket 120-1 at 15-16).  Although unavailable at the time, it was later determined that Dick and Jane's inventory contained approximately 4,099 items.  (Docket 118 at ¶ 75).  Mr. Eliason estimated 25-30 percent of his projected sales would be generated from products defined by SDCL § 11-12-1(2)(a) and (b).  Id.

Following the July 20, 2010, meeting, Mr. Bush instructed Scott Roeber and Dave Smith, City of Sturgis employees, to travel to Dick and Jane's to observe the contents of the store.  (Docket 118 at ¶ 63).  The purpose of the visit was to verify the merchandise at Dick and Jane's was as described by Mr. Eliason during his meetings with Mr. Bush.  Id. at ¶ 64.  Mr. Bush did not instruct Mr. Roeber and Mr. Smith on the types of products regulated by the adult-oriented business statute nor did he give the city employees a copy of the law.  (Docket 125-1 at 34:10-17).  Following their visit, Mr. Roeber and Mr. Smith reported they believed the majority of the merchandise for sale at Dick and Jane's consisted of "sex toys and different things" including "the adult toys, the dildos, the videos, the blow-up dolls."  (Docket 118 at ¶ 65).  Mr. Bush never visited the proposed location.

On July 30, 2010, Mr. Eliason and Mr. Bush had another meeting.  Id. at ¶ 66.  During the meeting, Mr. Bush gave Mr. Eliason a letter denying Mr. Eliason's request for a certificate of occupancy.  Id. ¶ 67.  The basis for denying the certificate of occupancy was that Dick and Jane's would be operating as an adult-themed business in violation of SDCL § 11-12-2.  Id. at ¶ 68.  Mr. Bush noted in the letter there were "several residence[s] located within the one-fourth mile requirement."  (Docket 1-6 at 2).

Following this meeting, counsel for plaintiffs sent a letter to Mr. Bush requesting he forward the letter to the City's legal counsel.  (Docket 1-8).  The plaintiffs asserted the City wrongly denied a certificate of occupancy for Dick and Jane's in violation of the First Amendment.  Id.  The letter claimed the definition of "adult bookstore or video store" in SDCL § 11-12-1(2) was unconstitutionally vague.  Id.  The plaintiffs requested the City to perform a visual inspection and if they still believed Dick and Jane's would be operating in violation of SDCL § 11-12-2, asked the City to articulate its reasons and provide plaintiffs with a meaningful opportunity to comply.  Id.

On August 3, 2010, Greg Barnier, Sturgis City Attorney, responded to plaintiffs' letter.  (Docket 1-9).  The City's response informed plaintiffs that granting Dick and Jane's a certificate of occupancy would require that the "City just ignore the statutory language" of SDCL § 11-12-2.  Id.  The City did not conduct a further inspection of Dick and Jane's nor did the City's letter provide guidance to Dick and Jane's on how to comply with SDCL § 11-12-1(2).  Rather, the City proposed Mr. Eliason should bring a declaratory judgment

action to have the state circuit court determine whether Dick and Jane's violated the "intent and purpose of the language of SDCL § 11-12-2." Id.

On August 5, 2010, plaintiffs filed a verified complaint against the City of Sturgis in federal district court. (Docket 1). Plaintiffs' complaint challenges the constitutionality of section 2.03.13 of the City of Sturgis Municipal Code of Ordinances and Chapter 11-12 of the South Dakota Codified Laws (collectively "the regulations"). Id. Plaintiffs argue the regulations are unconstitutional on their face and as applied under the First and Fourteenth Amendments to the United States Constitution. Id.

**DISCUSSION**

**A.  Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact."
Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is
such that a reasonable jury could return a verdict for the nonmoving party,
then summary judgment is not appropriate.  Id.  However, the moving party is
entitled to judgment as a matter of law if the nonmoving party has failed to
"make a sufficient showing on an essential element of her case with respect to
which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).  In such a case, "there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts immaterial."  Id. at
323.

In determining whether summary judgment should issue, the facts and
inferences from those facts must be viewed in the light most favorable to the
nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475
U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-
sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at
251-52.

**B.    Vagueness Standard**

The United States Supreme Court explained the rationale for
constitutional challenges to vague statutes:

> It is a basic principle of due process that an enactment is void for
> vagueness if its prohibitions are not clearly defined.   Vague laws

offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.  Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.  Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972) (punctuation and footnotes omitted); see also Kolender v. Lawson, 461 U.S. 352, 357-58 (1983) (a law restricting speech is impermissibly vague if it fails to provide fair notice to reasonable persons of what is prohibited, or if it fails to provide reasonably clear guidelines for law enforcement officials, resulting in a "chilling" effect on speech protected by the First Amendment); Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 497-99 (1982) (noting that a "more stringent vagueness test should apply" where a law interferes with the right of free speech).

The criteria to evaluate language challenged on vagueness grounds is that of "flexibility and reasonable breadth, rather than meticulous specificity" or "mathematical certainty."  Grayned, 408 U.S. at 110.  These standards should not be "mechanically applied," but rather should be considered in light

of the "nature of the enactment."  See Village of Hoffman Estates, 455 U.S. at 498.

Government regulation of adult-oriented establishments that sell sexually explicit but non-obscene material using statutory schemes similar to those at issue in this case touch upon First Amendment freedoms.  The United States Supreme Court confirmed that businesses providing non-obscene, sexually-explicit material are entitled to protection by the First and Fourteenth Amendments.  See Young v. American Mini Theatres, Inc., 427 U.S. 50, 69-71 (1976); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986); see also Ellwest Stereo Theater, Inc. v. Boner, 718 F. Supp. 1553, 1560 (M.D. Tenn. 1989) ("it is a fundamental precept of the First Amendment to the United States Constitution that all expression, whether it is written, pictorial or by way of performance, is presumptively protected against government interference and restraint.") (citing Doran v. Salem Inn, Inc., 422 U.S. 922 (1975); Roaden v. Kentucky, 413 U.S. 496 (1973); Schad v. Borough of Mount Ephraim, 451 U.S. 61 (1981)).

The Supreme Court recognizes sexually-oriented businesses may have negative secondary effects on communities surrounding an adult business. Young, 427 U.S. at 71.  In light of these potential secondary effects, the Supreme Court allows local governments to regulate adult businesses, not based on the content of the speech, but as a response to their possible negative

impact on the community.  Id.  Despite permitting limited governmental restrictions on adult businesses, the Supreme Court requires statutes and ordinances to be sufficiently clear so reasonable persons know what is prohibited and how to comply.  Kolender, 461 U.S. at 357-58.  A lawfully operated adult-oriented business has the same right to sell its products to the public for a profit as any other business enterprise.  Community members who find an adult retail outlet morally objectionable need not enter or patronize the business.

Courts must take extra care in determining whether criminal statutes are vague or "reach[] a substantial amount of constitutionally protected conduct" because of the heightened risk of deterring people from engaging in lawful, protected conduct.  City of Houston v. Hill, 482 U.S. 451, 458 (1987). "The standards of certainty in punishing for offenses is higher than in those depending primarily upon civil sanctions for enforcement.  The crime must be defined with appropriate definiteness."  Winters v. New York, 333 U.S. 507, 515 (1948) (citations omitted).  SDCL Ch. 11-12 imposes criminal penalties for noncompliance.  SDCL § 11-12-2.

C.     **Validity of South Dakota Codified Law Ch. 11-12**

South Dakota Codified Law § 11-12-1(2) defines an adult bookstore or video store as:

> a commercial establishment that offers for sale or rent any of the following as *one of its principal business purposes*:

14

(a) Books, magazines, periodicals, or other printed matter, photographs, films, motion pictures, videocassettes or reproductions or slides, or other visual representations that depict or describe specific sexual activities or specific anatomical areas;

(b) Instruments, devices, or paraphernalia, that are designed for use in connection with specific sexual activities.

SDCL § 11-12-1(2) (emphasis added).

Business people who choose to engage in the commercial activities set forth in SDCL § 11-12-1(2)(a) or (b) are subject to various location restrictions. SDCL § 11-12-2. Failure to comply with the location restrictions is a Class 1 misdemeanor for each day of non-compliance. Id.

The crux of the parties' dispute involves the definition of "adult bookstore or video store" found in SDCL § 11-12-1(2) and specifically whether the phrase "as one of its principal business purposes" is unconstitutionally vague on its face or as applied to Dick and Jane's. Defendants argue the phrase "one of its principal business purposes" contains familiar terms capable of ready understanding by persons of ordinary intelligence. Defendants argue the court must construe the phrase "one of its principal business purposes" in the context of the statute as a whole. Plaintiffs argue the phrase "one of its principal business purposes" is impermissibly vague because it does not provide a person of ordinary intelligence with fair notice of what level of business is enough to trigger regulation under the statute or the related City ordinance.

## 1.      Vague As Applied

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colorado, 530 U.S. 703, 732 (2000).  "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court."  Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004) (citing City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758-89 (1988).  "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable."  Id.

SDCL Ch. 11-12 is unconstitutional as applied to plaintiffs.  The inability of the City of Sturgis officials charged with enforcing the statute to define its key terms weighs heavily against the statute's constitutionality.  The definition of "adult bookstore or video store" in SDCL § 11-12-1(2)(a) and (b) focuses only on an establishment's business purpose in offering sexually-explicit materials either "depict[ing] or describ[ing] sexual activities or specific anatomical areas" or those materials "designed for use in connection with specific sexual activities."  The City of Sturgis focused instead on the nature of the other, non-sexually explicit material offered, the context in which non-sexually explicit

items are displayed, and past business enterprises of Mr. Eliason in determining whether Dick and Jane's qualified as an adult bookstore.

Mr. Barnier, Sturgis City Attorney, remarked in his letter to plaintiffs' counsel that granting Dick and Jane's a certificate of occupancy "would require the City to ignore [Mr. Eliason's] description of his past business practices. Given that history, the City believes that proposed business activities do violate SDCL § 11-12-2." (Docket 1-9 at 2). Mr. Bush testified, on behalf of the City of Sturgis, he considered Mr. Eliason's "operation of businesses in Tea and in Sioux Falls" when deciding whether to issue a certificate of occupancy to Dick and Jane's. (Docket 125-1 at 15:11-25 - 16:1-18). When asked how Mr. Eliason's former businesses played a part in the denial decision, Mr. Bush testified Mr. Eliason discussed his past businesses and practices relating to those businesses and "based on that, the determination was made that there was probable cause that [Dick and Jane's] would violate" South Dakota's adult-oriented business statutes. Id. at 16:19-25.

In addition to considering Mr. Eliason's previous businesses, Mr. Bush also testified:

> [A] duck is a duck. If you're selling adult items, that's probably your principal business. It would be different if you had maybe had a grocery store that contained several hundred thousand items and you had a backroom that had, you know, had some magazines or videos in it, you know, there I would say in that case it's probably not a principal business use, but then again there it would still be in violation of the state statute in the City of Sturgis' eyes.

Id. at 52:10-19.  Mr. Bush, again on behalf of the City of Sturgis, stated:

> Typically we have not allowed anything that's been deemed as an adult, whatever, adult toy, adult novelty, whatever, we have not allowed the sale of it . . . . the stance that the city council has taken that any adult, sale of any adult items would be a violation of that.

Id. at 52:24-25 - 53:1-8.  The obvious conclusion following from Sturgis' interpretation of SDCL Ch. 11-12 is that the City is free to deny an occupancy certificate as a way to ban the sale of lawful adult-oriented products in the community.

Mr. Bush's standard, "a duck is a duck" or "[I] know it when [I] see it" is not a constitutionally sound standard.  Id. at 52:10, 61:19-25 - 62:1-3; City of Knoxville v. Entm't Res., LLC, 166 S.W.3d 650, 656 (Tenn. 2005).  Particularly when speech or expression is being regulated, the Constitution demands governmental bodies make a greater attempt to define what conduct is prohibited to avoid "chilling" protected speech or expression.  Kolender, 461 U.S. at 357-58.

Mr. Bush testified he would consider various non-adult items as subject to regulation if they were in close proximity to regulated items.  When questioned about the book Sex Over 40, Mr. Bush testified the City would not consider the book to be a regulated item if it was inventory at Barnes & Noble, but it would be if sold at Dick and Jane's.  Id. at 78:4-13.  Mr. Bush also testified an October 2010 Cosmopolitan magazine would not be a regulated item if sold at Barnes & Noble or a grocery store but would be considered a

regulated item if sold at Dick and Jane's.  Id. at 90:3-7.  Mr. Bush testified

even PG or PG-13 movies could possibly be considered regulated items if sold

within the context of an adult-oriented business.  Id. at 96:23-25 - 97:1-6.

Mr. Bush's deposition testimony on behalf of the City of Sturgis reflects

the actual content analysis performed by the City officials.  Although SDCL Ch.

11-12 focuses only on an establishment's business purpose in offering sexually

explicit material, the City of Sturgis in reality focused instead on the nature of

non-sexually explicit materials offered by Dick and Jane's in determining

whether it was offering regulated materials.

As written, the determination of what constitutes "a principal business

purpose" under the statute is an entirely subjective one.  Excluding only the

most extreme cases, for example, where an establishment's sole purpose is to

offer sexually-explicit materials, the statute provides no guidelines to enable a

reasonable person to determine at what point the offering of sexually-explicit

material to the public becomes "one of its principal business purposes."  The

statute gives no objective guidance to businesses or to officials charged with its

enforcement.  Mr. Bush's and Mr. Barnier's statements illustrate the issue at

the core of the vagueness challenge: enforcement of the statute is left to the

personal predilections of those officially empowered to enforce it.  See Peekay,

Inc. v. City of Lacey, No. C03-5664RSM, 2005 WL 1528961, *3 (W.D. Wash.

2005) ("an ordinance that does not allow a business proprietor to identify how

much stock he could maintain and not run afoul of the ordinance, and that allows an inspector to 'merely eyeball' a location to see how it felt, is 'inherently violative of due process.' ") (citations omitted).

The City offers little insight into what it considers when determining whether a business' sale of adult items amounts to a principal business purpose. Mr. Bush testified the City does not take into consideration the amount of floor space or display space dedicated to adult items when determining a principal business purpose. (Docket 125-1 at 59:13-24). Mr. Bush testified the City does not look to see if a specific percentage of inventory or value of inventory is "adult" when determining a principal business purpose. Id. at 60:3-15, 61:3-14. Mr. Bush testified the City does not look to sales when determining a principal business purpose. Id. at 62:4-11. When asked to describe the difference between selling lotions at Dick and Jane's as compared to a store dedicated to selling suntan lotion, Mr. Bush testified "this is a little hard to explain." Id. at 55:6-14.

After being denied the certificate of occupancy, counsel for plaintiffs asked the City to articulate ways in which Dick and Jane's could comply with SDCL § 11-12-2. The City's response was an invitation for Mr. Eliason to bring a declaratory judgment action so the state circuit court could decide what the statute prohibits. These facts demonstrate the City itself was unsure what amount of material the phrase "one of its principal business purposes" was

intended to reach. Rather, the City's approach was "[I] know it when [I] see it." (Docket 125-1 at 62:1-3). If the City's legal counsel cannot defend the City's application of SDCL Ch. 11-12 without suggesting litigation, how is a business owner to understand what is and is not in compliance? See City of Columbia v. Pic-A-Flick Video, Inc., 531 S.E.2d 518, 522 (S.C. 2000) ("If there isn't a definition of 'principal business purpose' that the City can articulate to the trial court, the City cannot argue that businesses such as Pic-A-Flick have as a 'principal business purpose' the retail of the covered material.").

Requiring a business organization to engage in a guessing game as to how much sexually-oriented material is permissible without feeling the heavy regulatory hand of state law is a clear violation of due process. City of Knoxville, 166 S.W.3d at 655 (Tenn. 2005) ("A statute is unconstitutionally vague, therefore, if it does not serve sufficient notice of what is prohibited, forcing 'men of common intelligence [to] necessarily guess as its meaning.' ") (quoting Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973)). The "absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause." Smith v. Goguen, 415 U.S. 566, 578 (1974).

In the absence of any articulable standards from the State or the City, the court must conclude SDCL Ch. 11-2 and the ordinance are vague as applied to Dick and Jane's, "not in the sense that it requires [Dick and Jane's] to conform [its] conduct to an imprecise but comprehensible normative

standard, but rather in the sense that no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971), see also Peekay, 2005 WL 1528961 at *2-6 (granting partial summary judgment on plaintiff's due process claim that code defining adult businesses by reference to offering sexual material as "one of its principal business purposes" could not be enforced where that phrase is not defined in city's municipal code).

The court concludes the phrase "one of its principal business purposes" as used in the definition of an "adult bookstore or video store" and as applied to Dick and Jane's contains insufficient objective standards and guidelines to meet the requirements of due process. SDCL Ch. 11-12 fails to give fair notice to reasonable persons whether their commercial establishment qualifies as an adult-oriented business. The statute fails to provide reasonable persons with an opportunity to know what is prohibited under the statute, yet subjects individual business owners to criminal penalties if they do not comply.[5] Furthermore, the phrase "one of its principal business purposes" provides no clear guidelines to those charged with enforcing the statute and thus impermissibly delegates to them "basic policy matters . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned, 408 U.S. at 109. As applied to Dick and

---

[5]Mr. Eliason was criminally charged for allegedly violating SDCL § 11-12-2.

Jane's, the phrase "one of its principal business purposes" is too vague to be enforced and is, therefore, unconstitutional under the Due Process Clause of the United States Constitution.

## 2.    Facial Vagueness Challenge

In evaluating a law that "affect[s] communication protected by the First Amendment," the court may consider a challenge to its facial validity regardless of whether or not the law is vague as applied if "the statute's deterrent effect on legitimate expression is . . . both real and substantial and if the statute is [not] readily subject to a narrowing construction by the state courts." Young, 427 U.S. at 59-60 (citing Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975)).

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).  Striking down a statute on its face is "strong medicine" which should be employed "with hesitation, and then 'only as a last resort.' " New York v. Ferber, 458 U.S. 747, 769 (1982).  Striking the statute is not necessary in this case because, as previously explained, the statute has been unconstitutionally applied by the City of Sturgis to Dick and Jane's.  Further, "this is not a case where further precision in the statutory language is either impossible or impractical." Kolender, 461 U.S. at 361.

Sturgis' position in enforcing SDCL Ch. 11-12 is fraught with First Amendment issues. The City and its officials simply do not allow the sale of adult items.[6] The City interprets SDCL Ch. 11-12 not merely as a means of regulating certain adult-oriented businesses but rather as a means to ban those businesses from engaging in the legal sale of adult-oriented products.

The Attorney General argues the "phrase 'one of its principal business purposes' is clear, certain, . . . unambiguous" and constitutional as used in the statute. (Docket 127 at 8). The words "fast" and "slow" are certainly common and familiar as well, but if used in a statute to describe prohibited conduct - you must not drive "too fast" or "too slow" - they would no more pass constitutional muster than does the language in this statute. "[I]t is not the words themselves [which] must be capable of ready understanding by persons of ordinary intelligence, but the *conduct that is prohibited* that must be readily understood." City of Knoxville, 166 S.W.3d at 657 (emphasis in original); Grayned, 408 U.S. at 108-109. The phrase, "one of its principal business purposes," as found in SDCL § 11-12-1(2) merely establishes that if a business has an undefined amount of sexually-explicit material, then it is subject to the location restrictions of SDCL § 11-12-2. What is a principal business purpose to one person may just as easily not be a principal business purpose to another.

_____

[6]Presumably, this would exclude those businesses which were "grandfathered in" at the time SDCL Ch. 11-12 became law.

The defendants point out that mathematical certainty in the statute is not required. It is true "mathematical certainty" can seldom be expected from the language of state statutes. See Grayned, 408 U.S. at 110. Nonetheless, in the context of statutes which may restrict First Amendment rights, courts demand more "narrow specificity." NAACP v. Button, 371 U.S. 415, 433 (1963). Although mathematical precision is not required, more precision is necessary than the phrase "one of its principal business purposes," especially where the enforcing body is unable to explain its decision-making process in constitutionally appropriate terms, has no objective standard for determining whether a particular business falls within the scope of SDCL § 11-12-1(2)(a) and (b), and where criminal sanctions apply. SDCL Ch. 11-12 is exactly the type of statute which provides insufficient notice to those potentially regulated by its terms.

The language of SDCL § 11-12-1(2), and specifically the phrase "one of its principal business purposes," is capable of further precision.[7] Whether the

_____

[7]Several counties in South Dakota have taken measures to alleviate the imprecision of the phrase "one of its principal business purposes" as it relates to establishments selling or renting adult products. Pennington County has added a definition of "one of its principal business purposes" to its zoning ordinance. Pennington County's zoning ordinance defines "one of its principal business purposes" as

> a business that maintains at least 40% of its inventory items for sale or rent that are characterized by an emphasis on matter depicting, or relating to "specified sexual activities" or "specified anatomical areas."

Pennington County Zoning Ordinance § 103; see Docket 67-10 at 3.

City chooses to define this phrase in terms of a certain percentage of adult inventory, a percentage of gross sales of adult material, an amount of floor space dedicated to adult material, a combination of these, or some other way is ultimately up to the City, the Legislature, and South Dakota state courts. A more precise definition will eliminate the First Amendment issues inherent in the statute and in its enforcement as discussed in relation to Dick and Jane's. That is, it will provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited and will prevent arbitrary and discriminatory enforcement. Grayned, 408 U.S. at 108-09. Accordingly, it is hereby

ORDERED that plaintiff's second motion for summary judgment (Docket 124) is granted as it relates to plaintiffs' as-applied challenge to SDCL Ch. 11-12 and denied as it relates to plaintiffs' facial challenge to SDCL Ch. 11-12.

IT IS FURTHER ORDERED that South Dakota's motion for summary judgment (Docket 113) is denied.

---

Meade County has added a somewhat unhelpful definition of "primary business purpose" to its zoning ordinance. Under Meade County's ordinance, primary business purpose is defined as

a substantial or significant portion of its stock or trade for sale or rental and characterized by an emphasis on matter depicting, describing, or relating to "specified sexual activities" or "specified anatomical areas."

Meade County Ordinance No. 25 § I(2); see Docket 46-4 at 2. Lawrence County has a similar definition. See Lawrence County Zoning Ordinance Ch. 3. (Docket 67-11 at 20).

IT IS FURTHER ORDERED that the City of Sturgis' motion for summary

judgment (Docket 116) is denied.

Dated March 8, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE